UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SAFECO INSURANCE COMPANY OF
OREGON,

    Plaintiff,

  v.

FEDERATED MUTUAL INSURANCE
COMPANY,

    Defendant.

Case No. 3:13-cv-00670 -ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

Beaverton Toyota Co., Inc. ("Beaverton Toyota") was insured under Garage Liability Policy No. 9029193 issued by defendant, Federated Mutual Insurance Company ("Federated") to Russ Auto Group ("Russ Auto")[1] on August 4, 2011 for the period from June 28, 2011, to June 28, 2012 ("Federated Garage Policy"). This case involves a dispute over coverage under that policy involving a vehicle sold by Beaverton Toyota to Erin Douge ("Douge") on February 18,

---

[1] The Garage Policy lists the insured as "Russ Auto Group." Morphew Decl., ¶ 3 & Ex. 10, p. 36. While the Oregon Secretary of State lists no business known as "Russ Auto Group," it does list: (1) "Russ Auto, Inc." at the same address as given for Russ Auto Group in the Federated Garage Policy (Registry Number 091929-15); (2) "Beaverton Toyota" as an assumed business name of Russ Auto, Inc. from September 2007 until March 2008 (Registry Number 463912-98); and (3) "Beaverton Toyota Co., Inc." at the same address as is listed for both Russ Auto, Inc. and for Beaverton Toyota (Registry Number 091929-15). *See* http://egov.sos.state.or.us/br/pkg_web_name_srch_inq.login (last visited April 8, 2014).

1 – OPINION AND ORDER

2012.  The next day, while driving southbound in the northbound lanes of Oregon Highway 217, Douge collided head on with the vehicle of Hillary Maxfield ("Maxfield").  In December 2012, Maxfield filed a personal injury action against Douge in Washington County Circuit Court for the State of Oregon, *Maxfield v. Douge*, Case No. C127766CV ("Underlying Action").  Christ Decl., ¶ 2 & Ex. 1.

Plaintiff, Safeco Insurance Company of Oregon ("Safeco"), issued an automobile policy to Douge's parents for the period from March 10, 2011, to March 10, 2012 ("Safeco Policy").  Durham Decl., ¶ 5 & Ex. 9.  On December 20, 2012, Safeco's attorney tendered the defense of the Underlying Action to Federated.  Christ Decl., ¶ 2.  Federated denied the tender.  *Id.*

On March 11, 2013, Safeco filed this action in Washington County Circuit Court against Federated, seeking a declaratory judgment that:  (1) Federated owes a duty to defend Douge in the action filed by Maxfield; (2) Safeco is entitled to contribution from Federated for the cost of defending Douge in the action filed by Maxfield; (3) Safeco is entitled to contribution from Federated for the cost of any settlement or judgment in the action filed by Maxfield; and (4) Federated's coverage is primary and Safeco's is excess with respect to Maxfield's claim against Douge.  Notice of Removal, Ex. 1, ¶ 12.  Federated then timely removed that action to this court based on 28 USC § 1441 and 28 USC § 1332.

Safeco is an Oregon corporation with its principal place of business in Oregon.  Federated is a Minnesota corporation with its principal place of business in Minnesota.  Notice of Removal, ¶ 7.  Based on the more than $166,000.00 in damages requested in the Underlying Action filed by Maxfield, the amount in controversy in this declaratory action exceeds $75,000.00, exclusive of interest and costs.  *Id*; *see Hunt v. Wash. State Apple Adver. Comm'n*, 432 US 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well

2 – OPINION AND ORDER

established that the amount in controversy is measured by the value of the object of the litigation."); *Budget Rent-A-Car, Inc. v. Higashiguchi.*, 109 F3d 1471, 1473 (9th Cir 1997) (In an action for declaratory relief, where "the applicability of . . . liability coverage to a particular occurrence is at issue, the amount in controversy is the value of the underlying potential tort action."). Accordingly, this court has jurisdiction pursuant to 28 USC § 1332.

All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). Federated and Safeco have both filed Motions for Summary Judgment (dockets #14 and #19). For the reasons that follow, Federated's motion is granted and Safeco's motion is denied.

## **STANDARDS**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FRCP 56(a). The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only determine[] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir 1989) (citation omitted). The substantive law governing a claim or defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000) (citation omitted). The court must view the inferences drawn from the

facts "in the light most favorable to the non-moving party." *Bravo v. City of Santa Maria*, 665 F3d 1076, 1083 (9th Cir 2011) (citations omitted).

## UNDISPUTED FACTS

### I. Purchase Transaction

On Saturday, February 18, 2012, Douge negotiated the purchase of a 2011 Toyota Yaris ("Yaris") from Beaverton Toyota for $14,635.00. Complaint, ¶¶ 4-5. Douge made a $2,000.00 down payment, leaving the remainder to be financed. Complaint ¶ 6 & Ex. A; Fortiere Decl., ¶¶ 4, 15 & Ex. 1.

In connection with the purchase, Douge and Beaverton Toyota executed the following documents, among others: (1) a motor vehicle purchase agreement; (2) a vehicle service agreement application; (3) a prepaid maintenance program application; (4) an application for title and registration; (5) a "7 Day Trial Exchange Privilege"; (6) an "as is" Agreement; (7) an agreement to provide accidental physical damage insurance for the vehicle; and (8) a Retail Installment Contract ("Contract"). Fortiere Decl., ¶¶ 4-11 & Exs. 1-8. In a section titled "CONSUMER PAPER," the Contract provides as follows:

> **Sales Transaction Subject to Approval of Financing**. The sale of the vehicle to you is subject to approval of financing. You agree to provide Dealer with all credit and income information reasonably required, and otherwise exert your best efforts, to have the Retail Installment Contract (contract) purchased by a third party. In the event that a third party declines to purchase the contract, Dealer reserves the right to carry the contract in house or to declare the purchase null and void. The Dealer has 14 days from the date the purchaser takes possession of the vehicle to obtain irrevocable acceptance of funding by a third party lender or the Dealer. **Until irrevocable contract acceptance by a third party or the Dealer, you shall have absolutely no right, title and interest in the vehicle.**

*Id*, ¶ 4 & Ex. 1, p. 2 (bold in original).

4 – OPINION AND ORDER

Douge applied for financing through Toyota Financial Services for the remainder of the purchase price. *Id*. After Douge signed a Credit Application for Toyota Financial Services, Beaverton Toyota immediately began the process of securing financing for the purchase. *Id*, ¶ 15.

In Section 19 of the Application for Title and Registration, which Douge signed as "owner," Douge identified the Safeco Policy issued to her parents as the applicable policy to satisfy Oregon's financial responsibility laws. *Id*, ¶ 8 & Ex. 5  Douge also provided Beaverton Toyota with an Oregon Insurance Identification Card referencing the Safeco Policy. *Id*, ¶ 11 & Ex. 8. Safeco admits that Douge was an insured under the Safeco policy. Durham Decl., ¶ 5 & Ex. 9.

After signing the various purchase documents, Douge took possession of and drove the Yaris off Beaverton Toyota's lot. Complaint ¶ 7. At that point, Beaverton Toyota had no physical control over her use of the Yaris. Fortiere Decl., ¶¶ 12-14.

## II. The Underlying Action

The next day, February 19, 2012 (Sunday), while driving the Yaris, Douge was involved in an accident with Maxfield. Complaint, ¶ 7. Maxfield then filed the Underlying Action against Douge for personal injuries and other damages in the Washington County Circuit Court. *Id*, ¶ 9. Safeco agreed to defend Douge in the Underlying Action. *Id*, ¶ 10. However, Safeco contends that Maxfield's claim against Douge is also covered by the Federated Garage Policy because Beaverton Toyota still owned the Yaris at the time of the accident. *Id*, ¶ 11.

///

///

///

5 – OPINION AND ORDER

**DISCUSSION**

### I. Legal Standards

The interpretation of an insurance policy is generally a question of law, the primary goal of which is to ascertain the intentions of the parties "based on the terms and conditions of the insurance policy." *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or 464, 469-70, 836 P2d 703, 706 (1992), citing ORS 742.016; *Farmers Ins. Exch. v. Crutchfield*, 200 Or App 146, 153, 113 P3d 972, 976 (2005), citing *May v. Chicago Ins. Co.*, 260 Or 285, 292-94, 490 P2d 150, 153-54 (1971). In its interpretive endeavor, a court "begin[s] with the wording of the policy, applying any definitions that are supplied by the policy itself and otherwise presuming that words have their plain, ordinary meanings." *Tualatin Valley Hous. Partners v. Truck Ins. Exch.*, 208 Or App 155, 160, 144 P3d 991, 993 (2006). If the "disputed terms are susceptible to more than one plausible interpretation, however, we examine those terms in the broader context of the policy as a whole." *Id*, citing *Hoffman*, 313 Or at 470, 836 P2d at 706.

### II. Interpreting the Term "Own"

The parties dispute whether Douge was an "insured" under the Federated Garage Policy at the time of the accident. Under that policy, Federated agreed to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of covered 'autos'" and has "the right and duty to defend any 'insured' against a 'suit' asking for these damages." *Id*, ¶ 4 & Ex. 10, p. 18. The "insureds" include: "Anyone else while using with your permission a covered 'auto' you own . . . ." *Id*, Ex. 10, p. 19. Federated argues that because all incidents of ownership had passed to Douge,

6 – OPINION AND ORDER

Beaverton Toyota did not "own" the Yaris the time of the accident, such that Douge was not "using" the Yaris with its "permission."

Safeco responds that a single sentence in the Contract between Douge and Beaverton Toyota requires a contrary finding that Douge was, for purposes of the Federated Garage Policy, a permissive user of the Yaris which Beaverton Toyota still owned at the time of the accident.

The crucial question is what vehicles Federated and Russ Auto (insuring garage operations at Beaverton Toyota) intended that Beaverton Toyota would "own" when insuring permissive users of such autos. The Federated Garage Policy is silent on what it means to "own" a vehicle. Thus, this court must ascertain the meaning of that term.

In a case with remarkable parallels to this case, the Oregon Court of Appeals said the following about the ordinary meaning of the term "own" in the context of insurance coverage under a garage policy:

> To "own" means "to have or hold as property or appurtenance: have a rightful title to, whether legal or natural: POSSESS." Webster's Third New Int'l Dictionary 1612 (unabridged ed. 2002); *see* Black's Law Dictionary 1137 (8th ed. 2004) ("[t]o rightfully have or possess as property; to have legal title to"). Those definitions comport with the common understanding of "owner" in the liability insurance context. *See, e.g., Hawaiian Ins. & Guar. v. Fin. Sec. Ins.*, 72 Haw. 80, 88, 807 P.2d 1256, 1260 (1991) ("[T]he word 'owner' when considered in its plain, ordinary and accepted sense in common speech would include a buyer who enters into a valid sales agreement and takes possession and control of the subject vehicle."). In a case involving issues very closely related to those presented here, the Oregon Supreme Court also focused on the possessory and control attributes of ownership. *See Fagg v. Massachusetts B. & I. Co.*, 142 Or. 358, 19 P.2d 413 (1933).

*Crutchfield*, 200 Or App at 154-55, 13 P2d at 977.

With respect to the possessory and control attributes of ownership, Safeco focuses on the single sentence in the Contract between Douge and Beaverton Toyota, written in bold, which

7 – OPINION AND ORDER

states: "**Until irrevocable contract acceptance by a third party or the Dealer, you shall have absolutely no right, title and interest in the vehicle.**" Fortiere Decl., Ex. 1, p. 2. Although Federated insists that Beaverton Toyota "fully expected" financing approval to occur on Monday, February 20, 2012, the issue is where the parties stood on the date of the accident, Sunday, February 19, 2012. Despite the fact that Douge had possession of the Yaris, the Contract specifies that she had "no right, title and interest" at the time of the accident due to the lack of financing approval. Accordingly, Safeco argues that Beaverton Toyota continued to "own" the Yaris.

In contrast to that one sentence on which Safeco relies, Federated points to other language in the Contract and other documents executed by Douge and Beaverton Toyota which contemplate that Douge became the new "owner" of the Yaris, leaving Beaverton Toyota or Toyota Motor Corporation with only a security interest in the Yaris granted by Douge in exchange for the financing contemplated in the Contract. Despite the language purportedly giving Douge no "right, title or interest" in the Yaris pending approval of financing, the Contract also provides that Douge "[is] buying the [Yaris]" and "grant[s Beaverton Toyota] a security interest in the [Yaris]." *Id*, Ex. 1, p. 1. The Application for Title and Registration also lists Douge as the "Owner" and Toyota Motor Credit Corporation as the Security Interest Holder. *Id*, Ex. 5.

The Contract and Motor Vehicle Purchase Agreement signed by Douge and Beaverton Toyota both contemplate that Douge would return the Yaris to Beaverton Toyota in the event that financing of the balance owing is not approved. *Id*, Ex. 1, p.2, & Ex. 2, p.2. However, if Douge failed and refused to return the Yaris, then the Contract grants Beaverton Toyota "the

8 – OPINION AND ORDER

rights of a secured creditor under ORS Chapter 79, including the right to self-help repossession." *Id*, Ex. 1, p. 2.

The difficulty is that "ownership" is a multifaceted legal concept. The sentence announcing that Douge had "absolutely no right, title and interest" in the Yaris directly conflicts with interests which Douge clearly did have when she drove the Yaris off the Beaverton Toyota lot. She clearly had a possessory interest in the vehicle. She also clearly had a financial interest in the vehicle. The disputed sentence appears in a section of the Contract titled "CONSUMER PAPER," which is dedicated entirely to sorting out the obligations between Douge and Beaverton Toyota with respect to the remaining balance owing on the Yaris. Beaverton Toyota agreed that the balance due on the Yaris could be paid through financing that it agreed to procure on Douge's behalf by selling the Contract to Toyota Motor Credit Corporation or some other third party. Both Beaverton Toyota and Douge had, upon the occurrence or non-occurrence of certain conditions, the opportunity to unwind the sale. The issue is whether that financial arrangement – which involved only Douge and Beaverton Toyota – controls the issue of whether the Yaris was a vehicle Beaverton Toyota "owned" at the time of the accident for purposes of the liability insurance contract between Federated and Russ Auto. Because Oregon has fully embraced the doctrine of equitable ownership under these circumstances, this court concludes that it does not.

## II. Equitable Ownership

The parties strenuously dispute whether this case is controlled by *Crutchfield* which addressed the identical issue, namely whether a garage liability policy obligated the insurer "to defend or indemnify a person who ostensibly purchased a vehicle from the dealer and shortly thereafter was involved in an accident?" *Crutchfield*, 200 Or App at 148, 113 P3d at 973. In that

case, Crutchfield entered into a contract to trade in his car on a pickup. The car was worth more than the pickup, so the dealer paid Crutchfield for $1,690.00, with a written understanding that it would pay another $500.00 once Crutchfield produced clear title to the car. Crutchfield took possession of the pickup and later that day was involved in a collision which seriously injured another driver, Nelson. Shortly thereafter, the dealer discovered that there was a lien on the car, told Crutchfield the "deal was off" and demanded the return of the pickup and the partial cash payment. The dealer's insurer (Farmers) sued Crutchfield and Nelson, seeking declaratory relief that it was not obligated to defend or indemnify Crutchfield against Nelson.

The "determinative inquiry" was "[f]rom the perspective of the 'ordinary purchaser of insurance,' what did [the insurer/Farmers] and [the dealer] intend when they entered into their insurance contract." *Id* at 154, 113 P3d at 977. There, as here, the issue was whether the dealer could be said to "own" the car at the time of the accident. Beginning "with the disputed term's ordinary meaning," the court noted that the Oregon Supreme Court in *Fagg v. Massachusetts B. & I. Co.*, 142 Or 358, 19 P2d 413 (1933), "focused on the possessory and control attributes of ownership." *Id* at 155, 113 P3d at 977. Despite the lack of clear title at the time of the accident, the court concluded that the garage liability policy provided no coverage, explaining as follows:

> [G]iven the common and unambiguous meaning of "own" . . . when [the insurer] and [the dealer] entered into the insurance contract, they did not intend that [the dealer's] indemnity obligation would extend to accidents that occurred after (1) the insured had entered into a sales contract, such as the one in this case; (2) the buyer had taken possession of the automobile; (3) the buyer had performed all then-due obligations under the sales contract; and (4) the insured [dealer] had no control over how the buyer used the automobile. An ordinary purchaser of insurance would not intend or expect that the coverage it has purchased would protect a party who had an interest in the transferred automobile, who had possession of the automobile, and who had complete control over the automobile's use.

*Id* at 160, 113 P3d at 980.

10 – OPINION AND ORDER

The court held that the dealership "did not own the pickup at the time of the accident [and therefore] the [garage liability insurance policy] did not cover the accident." *Id* at 148, 113 P3d at 974. It made clear that the Oregon vehicle code was "inapposite," noting that, in other contexts, "title may be a more substantial incident of ownership than it is here," and instead focused its analysis only on the objectively reasonable expectations of the dealer and the insurer:

> [O]ur task is to ascertain whether, in entering into the insurance contract here, an objectively reasonable insurer and insured [dealer] would have intended that, in the circumstances here, the insured dealership would be considered to "own" the vehicle, obligating the insurer to provided continuing liability coverage.

*Id* at 163 n7, 113 P3d at 982 n7.

Whatever the uncertainties created by the "no right, title and interest" language in the Contract during the brief period of time before the accident, no such uncertainties existed with regard to any other incidents of "ownership" and the anticipated position of the parties by Monday, February 20, 2012. The signed Contract: (1) lists Douge as the party granting a security interest in the Yaris; (2) evidences that Douge paid a down payment sufficient to cover the cost of license and registration fees, title fees, a title and registration processing fee, and the cost of an optional service contract; (3) makes Douge responsible for all damages occurring to the vehicle; (4) requires Douge to obtain physical damage insurance on the vehicle; and (5) warns Douge that such insurance "does not include coverage for public liability, bodily injury, or property damage (other than to the [Yaris]) caused to Buyer or others." Fortiere Decl., Ex. 1, p. 1. The Application for Title and Registration, completed at the same time, lists Douge as the "owner" of the Yaris. *Id*, Ex. 5.

As required in the sale documents, Douge provided proof to Beaverton Toyota that she had her own insurance coverage through Safeco. Douge and Beaverton Toyota executed all

11 – OPINION AND ORDER

documents required to complete the sale and transfer of ownership to Douge. Douge took possession of the Yaris and drove it off of the Beaverton Toyota premises. Douge – not Beaverton Toyota – had complete physical "possession, use and control" of the Yaris. At the time of the accident, Beaverton Toyota had not disavowed the Contract. Instead, Beaverton Toyota began the process of securing financing for the purchase and, by the time of the accident, had transmitted a request to the company that gathers financing information for Toyota Motor Credit Corporation. Beaverton Toyota expected approval of the financing without further involvement by Douge.

Douge left Beaverton Toyota in possession of the Yaris, and nothing in the record indicates that she had any further contact with Beaverton Toyota until after the accident. Both Beaverton Toyota and Douge anticipated that the Yaris would leave Beaverton Toyota's premises and remain exclusively in Douge's possession, with Douge supplying the necessary liability insurance and making all subsequent decisions about where and when to drive it. In fact, prior to the accident, the Yaris did remain in Douge's possession overnight, and nothing in the record supports the conclusion that Douge again sought or received "permission" to use the Yaris the following day. This situation is in sharp contrast to one in which a customer takes a car off the dealer's premises for a test drive. In that context, both parties anticipate that the vehicle will be returned to the dealership within a short period of time, and both parties understand that the customer has the "permission" of the dealership to use the vehicle for the purpose of making a purchase decision.

As explained above, Safeco focuses on one sentence in the Contract announcing that Douge has "absolutely no right, title and interest" in the Yaris until financing is approved. However, the Federated Garage Policy between Federated and Russ Auto (insuring garage

12 – OPINION AND ORDER

operations at Beaverton Toyota) is at issue, not an insurance policy or some other contract to which Douge was a party. The one sentence in the Contract between Beaverton Toyota and Douge is but one of the factual circumstances to be considered in determining who, for purposes of the Federated Garage Policy, "owned" the Yaris at the time of the accident. As held in *Crutchfield*, the determinative question is what Federated and Russ Auto (insuring garage operations at Beaverton Toyota) objectively intended as to that issue.

Safeco contends that *Crutchfield* is distinguishable because Crutchfield had a legal right to the pickup if he fully performed his obligations. In contrast, Safeco argues that Douge had no right to acquire formal title to the vehicle because the Contract reserved to Beaverton Toyota the right to declare the transaction null and void if it was unsatisfied with the financing. According to the Motor Vehicle Purchase Agreement, "Delivery of the Vehicle to Purchaser is subject to credit approval by a financial institution of Dealer's choice (Lender). If Purchaser's credit is not approved by Lender, Purchaser will immediately return the Vehicle to Dealer." *Id*, Ex. 2, p. 2.

However, Douge clearly did have the right to acquire formal legal title, either by a third party or Beaverton Toyota accepting the Contract, or by fully performing her only remaining obligation, namely to pay the balance she still owed. The Contract expressly gave Douge the "right to pay in advance the full amount due." *Id*, Ex. 1, p. 2. The fact that she and Beaverton Toyota completed the paperwork to attempt to secure financing through Toyota Motor Credit Corporation did not extinguish that right. Safeco makes a similar argument to distinguish *Fagg*, the case relied on most heavily by the court in *Crutchfield*.

This court concludes that this case is not distinguishable from *Crutchfield* in any material respect[2] and that the single sentence relied on by Safeco – clearly aimed at bolstering Beaverton

---

[2] The parties have cited a host of cases, both state and federal, from outside the District of Oregon and carefully explained their persuasive authority. However, with one exception, those cases predate *Crutchfield* and present facts less aligned with those in

13 – OPINION AND ORDER

Toyota's bid to repossess the Yaris in the event of its inability to obtain financing – is simply not sufficient to override all other considerations in interpreting what the parties to the Federated Garage Policy intended. Accordingly, as in *Crutchfield*, this court concludes that, in entering into the Federated Garage Policy, neither Federated nor Russ Auto (insuring operations at Beaverton Toyota) intended that Beaverton Toyota would "own" the Yaris, such that Federated would be obligated to provide continuing liability coverage. Beaverton Toyota entered into a contract for the sale of the Yaris; Douge took possession of the Yaris and performed all then-due obligations under the contract; and Beaverton Toyota had no control over how Douge used the Yaris.

A number of other issues are addressed in the briefing and supplemental briefing filed by the parties. However, given this court's conclusion that *Crutchfield* is dispositive of this case, it need not and does not discuss those issues.

## ORDER

Based on the record, Federated's Motion for Summary Judgment (docket #14) is GRANTED and Safeco's Motion for Summary Judgment (docket #19) is DENIED. Accordingly, judgment will be entered in favor of Federated.

DATED  April 15, 2014.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

---

this case. The only exception is an unpublished case decided by the Ninth Circuit in 2011, upon which this court may not rely. Because *Crutchfield* turned on interpretation of the very term at issue here and was decided in the same state just a few years before the effective date of the Federated Garage Policy, it presents a compelling basis for determining what was intended by the term "own," used by parties in an identical insuring arrangement only six years later. In the face of *Crutchfield*, this court discerns no need to belabor the details of the other cases discussed at length in the briefing.